Ronald HANKINS, Appellee,

v.

William C. FINNEL, State of Missouri, Appellants.

No. 91–1299.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1991.

Decided May 22, 1992.

Rehearing and Rehearing En Banc Denied June 25, 1992.

Robert L. Presson, Jefferson City, Mo., for appellants.

Therese M. Schuele, Kansas City, Mo., for appellee.

Before ARNOLD,* JOHN R. GIBSON, and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The State of Missouri and William Finnel appeal from a district court[1] judgment enjoining the State of Missouri from attaching funds it had just paid Ronald Hankins to satisfy a judgment against its former employee, William Finnel. A jury had awarded Hankins $1 in nominal damages and $3,000 in punitive damages after finding that Finnel had sexually molested Hankins during the time that Finnel taught school at the Missouri State Penitentiary and Hankins was an inmate there. Shortly after this court affirmed the judgment, the State brought an ex parte action in the circuit court of Cole County, Missouri, seeking reimbursement for the cost of Hankins' incarceration pursuant to the Missouri Incarceration Reimbursement Act, Mo.Rev.Stat. §§ 217.825–217.841 (Supp. 1991). The State sought reimbursement equal to ninety percent of Hankins' judgment. The Cole County Circuit Court appointed a receiver to take control of the money paid to Hankins and later stayed proceedings pending the outcome of this action. The district court held that it had ancillary jurisdiction under Fed.R.Civ.P. 69(a), that the State waived its Eleventh Amendment immunity to the extent that it voluntarily accepted the obligation of the judgment against Finnel, and that the Supremacy Clause barred application of the Missouri reimbursement statute. *Hankins v. Finnel,* 759 F.Supp. 569 (W.D.Mo.1991). On appeal, the State argues that it has not waived its Eleventh Amendment immunity, that the district court lacked jurisdiction under Rule 69(a), that federal law does not preempt the Missouri Incarceration Reimbursement Act, and that the district court should have abstained. We affirm the judgment of the district court.

In 1988, Hankins sued Finnel in the district court for the Western District of Missouri, alleging that while he was an inmate in the penitentiary, Finnel sexually harassed or molested him on four occasions. Hankins attended the penitentiary school where Finnel was an instructor. The case was tried to a jury, which found for Hankins on his 42 U.S.C. § 1983 (1988) claims and awarded $1 nominal damages and $3,000 punitive damages. This court affirmed the judgment. *Hankins v. Finnel,* 909 F.2d 510 (8th Cir.1990). The Attorney General of the State of Missouri represented Finnel at trial and on appeal. The State also agreed to indemnify Finnel for any judgment against him pursuant to the statute entitled "State Legal Expense Fund," Mo.Rev.Stat. § 105.711 (Supp.1991).

On July 31, 1990, the State initiated ex parte proceedings in the Cole County Circuit Court attempting to obtain ninety percent of the amount it was to pay to Hankins as a result of the judgment against Finnel. Under the Missouri Incarceration Reimbursement Act, the State may seek reimbursement of up to ninety percent of a prisoner's assets, which are defined to include a money judgment received from the State as a result of a civil action against one of its employees. Mo.Rev.Stat. § 217.-827(1)(a).

The circuit court appointed a receiver to hold the funds in Hankins' inmate account and ordered Hankins to show cause why an

---

* The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

order should not be entered appropriating his assets to reimburse the State for the cost of his confinement. Three days after the circuit court's August 17, 1990, order, Hankins' account was debited by $3,234.22 for "cell reimbursement." On that same day, the State deposited the identical amount (representing the $3,000 judgment plus interest) into Hankins' overdrawn account.[2]

In November, Hankins returned to the district court, filing motions for a writ of mandamus to stay the state court proceedings and to proceed in aid of execution on the judgment. Before the district court could rule on the mandamus motion, the state court stayed its proceedings, making Hankins' first motion moot. *Hankins*, 759 F.Supp. at 570.

Addressing Hankins' other motion, the district court cited its authority under Fed. R.Civ.P. 69(a) to enforce its judgment and conduct proceedings in aid of execution. *Id.* at 571. Because the federal statute under which Hankins sued, 42 U.S.C. § 1983 (1988), provides no mechanism for enforcement of a judgment, the district court determined it must rely on Missouri law on that issue. The court concluded that Missouri law empowered it to conduct "proceedings in prohibition" under Mo.Rev. Stat. § 530.010 (1986). *Id.* It also cited federal case law permitting federal courts to exercise jurisdiction over nonparties that have an obligation to indemnify the judgment debtor. *Id.* The district court concluded that because the State of Missouri had consented to satisfy the judgment, the court retained ancillary jurisdiction to enforce that judgment. *Id.*

The district court next concluded that the Eleventh Amendment did not bar enforcement of the judgment against the State, as the State had waived its immunity to the extent that it had voluntarily agreed to indemnify its employee, Finnel, and had acted in his stead. *Id.* at 572. The district

court stated: "Where the State has stepped in to satisfy the judgment against Mr. Finnel, the State cannot then assert its Eleventh Amendment immunity to circumvent the Court's authority to enforce that judgment." *Id.*

The district court next addressed the conflict between 42 U.S.C. § 1983 and the Missouri Incarceration Reimbursement Act. The court concluded that although no provision in section 1983 "expressly conflicts with the state's right to attach a prisoner's assets," *id.* at 573, the Missouri Reimbursement Act nonetheless thwarts the objectives of section 1983. *Id.* at 574. The court explained: "If the State were permitted to seize the Section 1983 damage awards prisoners receive for prison employees' conduct, the prisoners would have no motive to bring such suits and the State and its employees would have no inducement to comply with federal law." *Id.* The court concluded that the Supremacy Clause invalidated the Missouri statute as applied in this case because it conflicted with section 1983. *Id.*

The district court thus enjoined the State from attaching the funds the State had just paid Hankins. This appeal followed.

## I.

Finnel and the State of Missouri[3] argue that the district court erred in concluding that the State had waived its immunity under the Eleventh Amendment. The district court did not find a "general waiver," but concluded that the State had waived its immunity with regard to the judgment in this case by "agree[ing] to indemnify" Finnel and then "stepp[ing] in to satisfy the judgment." *Hankins*, 759 F.Supp. at 572.

The State asserts that its statute authorizing representation and indemnification of employees who are sued does not constitute an express or implied waiver of the State's Eleventh Amendment immunity. It

---

2. Although the State claimed in the state court filings that it sought only $2,910.80, it debited Hankins' account by $3,234.22. Before the debit, Hankins' account balance was $33.78.

3. The two appellants will be referred to throughout the rest of our discussion as "the State." Although the State was not a party in the proceedings below, *Hankins*, 759 F.Supp. at 571–72, it filed a joint notice of appeal with Finnel.

further contends that its issuance of the check to Hankins[4] does not establish an implied waiver because no official, including the State's Attorney General, can waive the Eleventh Amendment by his actions. Only the Missouri Assembly, it asserts, can waive the State's immunity, and only by enacting general legislation.

■ As the State acknowledges, the Eleventh Amendment bar is not absolute. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). In certain instances, Congress may abrogate the states' sovereign immunity, or a state may consent to suit in federal court. *Id.* Because the "Eleventh Amendment implicates the fundamental constitutional balance between the Federal Government and the States," *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985), the Supreme Court has prescribed a stringent test for determining the existence of a waiver. A waiver must be " 'stated by the most express language,' " or, if implied, it must appear " 'by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' " *Feeney,* 495 U.S. at 305, 110 S.Ct. at 1873 (quoting *Atascadero State Hosp.,* 473 U.S. at 239–40, 105 S.Ct. at 3146, and *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (internal quotation omitted)).

■ A state may also waive its Eleventh Amendment immunity through conduct. *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984). Courts have inferred a waiver when the State has made a general appearance in federal court and defended a lawsuit on the merits. *See Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 555 n. 2, 42 L.Ed.2d 532 (1975); *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–84, 27 L.Ed. 780 (1883). In *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority,* 744 F.2d 880 (1st Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970

(1985), a governmental corporation "not only appeared but filed a counterclaim and a third-party complaint." *Id.* at 886. The First Circuit thus had "little trouble concluding that [the corporation] voluntarily submitted to the jurisdiction of the federal court, thereby waiving any Eleventh Amendment immunity. . . ." *Id.*

■ An Eleventh Amendment waiver need not be a general waiver, but may be a partial or limited one. *See WJM, Inc. v. Massachusetts Dep't of Pub. Welfare,* 840 F.2d 996, 1002–03 & n. 8 (1st Cir.1988) (by filing proofs of claim in debtors' Chapter 11 bankruptcy proceedings, State of Massachusetts made a "partial" waiver of its Eleventh Amendment immunity, exposing itself only to the debtors' claims that arose out of the same transaction or occurrence as its own claims against the debtor), *overruled in part on other grounds, Reopell v. Massachusetts,* 936 F.2d 12, 15 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991); *Moreno v. University of Maryland,* 645 F.2d 217, 220 (4th Cir.1981) (state waived its immunity to the extent that it obtained a stay of a district court order pending appeal by agreeing to pay refunds to university students if the order was upheld on appeal), *aff'd, Toll v. Moreno,* 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982). The district court here stressed the limited nature of the waiver, specifically stating that the State had not made a "general waiver." *Hankins,* 759 F.Supp. at 572. The State waived its immunity only "as it pertains to the judgment in this case." *Id.*

The State attacks the district court's determination, pointing to language in a Missouri state statute which declares that "[n]othing in sections 105.711 to 105.726 [the sections covering the State Legal Expense Fund] shall be construed to broaden the liability of the state of Missouri . . . nor to abolish or waive any defense at law which might otherwise be available to any agency, officer, or employee of the state of Missouri." Mo.Rev.Stat. § 105.726 (1986).

---

**4.** Hankins never actually received the check. The money was deposited in his account the same day that his account was debited for "cell reimbursement." His account record lists the debit before the credit.

This statute, the State asserts, clearly declares the State's intention not to waive its Eleventh Amendment immunity by representing or indemnifying state employees.

The State also relies on a trio of federal decisions in which the courts determined that statutes authorizing the state to represent or indemnify employees sued in connection with their official duties do not waive Eleventh Amendment immunity. For example, in *Williams v. Bennett*, 689 F.2d 1370 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), the court concluded that an Alabama statute authorizing the State to pay up to $100,000 for judgments awarded against officials and employees of the Board of Corrections did not waive the State's Eleventh Amendment immunity. *Id.* at 1377–78. The court relied in part on express language in the statute stating that "[n]othing in this section shall be deemed to waive the sovereign immunity of the [S]tate...." *Id.* at 1378 (citing Ala. Code § 41–9–74(c)). Two district court decisions construing similar statutes also found no waiver of sovereign immunity. *See United States v. DCS Dev. Corp.*, 590 F.Supp. 1117, 1120–22 (W.D.N.Y.1984) (statute authorizing state to represent and indemnify employees sued in connection with their official duties and attorney general's subsequent appearance in case do not add up to a waiver of Eleventh Amendment immunity); *Elliott v. Hinds*, 573 F.Supp. 571, 575 (N.D.Ind.1983) (attorney general's representation of state employee under terms of state statute does not waive Eleventh Amendment immunity).

█ We recognize that the State of Missouri, in section 105.726, clearly expressed its intent not to waive sovereign immunity by its enactment of certain statutes. That section disavows waiver, however, only with regard to the statutes that pertain to the State Legal Expense Fund; it says nothing about the Missouri Incarceration Reimbursement Act.

The cases that the State cites also are not dispositive of the issue before us. *Williams, DCS Development Corp.,* and *Elliott* all address the argument that a state indemnification statute waived the state's immunity so that the state or its agencies could be sued for money damages, or its employees could be sued for damages in their *official* [5] rather than individual capacities. *See Williams,* 689 F.2d at 1376; *DCS Dev. Corp.,* 590 F.Supp. at 1121; *Elliott,* 573 F.Supp. at 574–75. In both of these situations, the plaintiff seeks an award of damages from the state treasury. In this case, however, the state employee was sued in his *individual* capacity and damages were awarded against him as an individual. The State voluntarily entered the picture by agreeing to pay the judgment. The issue is not whether the State has waived its immunity so that it can be sued as a defendant in the main action, or its officials can be sued in their official capacity, but rather whether the State's actions in satisfying Hankins' judgment and then immediately attempting to recoup it can be deemed a limited waiver of immunity *solely with regard to the judgment.*

Although the State agreed to pay Hankins' judgment, it voluntarily and deliberately took actions designed to ensure that the money never reached Hankins' hands. The State initiated the ex parte action in state court three weeks before it credited Hankins' account. Although aware that Hankins was represented by appointed counsel, the State appeared ex parte before the state court and obtained orders to show cause and appointing a receiver. The State acted pursuant to the Missouri Incarceration Reimbursement Act, which specifically includes in its definition of assets "[a] money judgment received by the offender from the state as a result of a civil action" against the State or one of its agencies or employees and in which the claim arose from the performance of official duties on

---

**5.** In an official-capacity lawsuit, the State is considered the real party in interest, *Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir.1990), because relief is sought directly from the state treasury. *Lawson v. Bouck,* 747 F.Supp. 376,

380 (W.D.Mich.1990). In an individual capacity lawsuit, relief is sought from the individual, even though liability is predicated upon actions taken by that individual in his official capacity. *Id.*

behalf of the State. Mo.Rev.Stat. § 217.-827(1)(a)b.

The State cites no case that addresses whether a statute similar to Missouri's Incarceration Reimbursement Act waives sovereign immunity when state officials rely on that statute to recoup the judgment of an inmate who has successfully sued a state employee in federal court on a federal claim. In fact, one of the cases on which the State relies, *DCS Development Corp.*, qualifies its holding by stating that the attorney general's mere appearance in a suit does not constitute waiver "unless the Attorney General *seeks to take advantage of the suit for the benefit of the state,* or unless state law otherwise provides." 590 F.Supp. at 1121 (emphasis added). The *DCS* court then cites *Sosna,* in which the State of Iowa was deemed to have waived its Eleventh Amendment defense by entering a voluntary appearance and defending the case on the merits. 419 U.S. at 396 n. 2, 95 S.Ct. at 555 n. 2. Under Iowa law, such an action constituted a waiver of sovereign immunity.

Although the State of Missouri never entered a general appearance in this case, it did seek to take advantage of the suit for its own benefit. By representing and indemnifying Finnel, it provided what, in essence, amounted to an employment benefit for Finnel. Section 105.711.2(2) authorizes the expenditure of state funds when the plaintiff's claim concerns conduct "arising out of and performed in connection with [the employee's] official duties." The Missouri Incarceration Reimbursement Act then targets such judgment proceeds for recoupment by defining an inmate's "assets" to include money received from the State to satisfy a judgment against one of its employees where the inmate's claim arose from "the [employee's] conduct of official duties." Mo.Rev.Stat. § 217.-827(1)(a)b. In essence, the State achieves the advantage of protecting both its employees and its own coffers by paying a judgment with one hand that it intends to take back with the other.

The State's actions left Hankins with little more than a "stealth" payment—the judgment proceeds vanished before Hankins even knew he had been paid. For Eleventh Amendment purposes, we see little difference between this situation and a case in which a state simply reneges on its promise to pay. In *Moreno,* the Fourth Circuit found that the University of Maryland "explicitly" waived its immunity when it obtained a stay of a district court order by agreeing to pay certain tuition refunds should the order be affirmed on appeal. 645 F.2d at 220. The university failed to vindicate its position on appeal, and "so it must pay the refunds to which it agreed." *Id.* at 221.

We conclude, based on the combination of factors present here, that the State of Missouri made a limited waiver of its Eleventh Amendment immunity with regard to the judgment in this case.[6] It is evident that the district court found a waiver only with respect to the narrow facts of this case, and we are convinced that it did not err. The State, acting under statutory authority, represented Finnel at all stages of the litigation and agreed to indemnify him. It then "paid" the judgment, but not before instituting a state court proceeding attempting to recoup it. The State took these actions ex parte despite its knowledge that Hankins was represented by counsel. The ledger sheet from Hankins' inmate account lists a $3,234.22 debit for "Cell Reimbursement" just before it lists the credit from the State of Missouri in the identical amount. The debit and credit were both entered on August 20, 1990, about three weeks before the State notified Hankins of its actions. In sum, the State acted to the advantage of and for the benefit of itself.

The State of Missouri also argues that the Attorney General does not possess the

6. The overly general arguments of the dissent do not merit a detailed response as they fail to focus on the narrow and unique factual situation presented in this case, which in itself is without precedent. A reading of this opinion makes it evident that it is not based upon public policy, as the dissent charges. It goes without saying that we decide only the limited issues before us and do not reach other issues that may arise in the future.

authority to waive the Eleventh Amendment by his mere actions and that only the General Assembly can waive immunity and only by enacting general legislation. This argument overlooks the fact that the Attorney General acted under the authority of state statutes. Although the Missouri legislature expressly declared that the statutes governing the State Legal Expense Fund do not waive any immunity defense, see Mo.Rev.Stat. § 105.726, it included no such language in the Missouri Incarceration Reimbursement Act.

We further observe that even without the existence of the waiver, Hankins still would be entitled to proceed in district court. Although the district court could not, in the absence of a waiver, enjoin the State from attaching Hankins' funds, it could enjoin state officials. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–03, 104 S.Ct. 900, 907–09, 79 L.Ed.2d 67 (1984). The Eleventh Amendment bars a federal court from awarding retroactive monetary relief against a state or its officials (when sued in their official capacity), but it does not bar a federal court from issuing an injunction ordering a state official to comply in the future with federal law.[7] Id. See also Edelman v. Jordan, 415 U.S. 651, 666–67, 94 S.Ct. 1347, 1356–58, 39 L.Ed.2d 662 (1974). The State of Missouri, through its responsible officials, parted with the $3,234.22 at issue in this case when Hankins' account was credited with this amount. That the same or other state officers then seized this fund under the Missouri Incarceration Reimbursement Act

does not relieve the officials taking possession of this fund from liability to pay the money in response to a court order directed to those individuals, and limited to the funds seized. The type of relief sought here[8] is prospective and injunctive, and thus is not barred by the Eleventh Amendment provided that the court directs any order toward state officials, not the State. Determining the identity of the necessary officials is a matter the district court may address if need be.

## II.

■ The State next argues that the district court lacked jurisdiction under Fed. R.Civ.P. 69(a), which governs execution, to decide whether 42 U.S.C. § 1983 preempts the Missouri Incarceration Reimbursement Act.

The district court primarily relied on Argento v. Village of Melrose Park, 838 F.2d 1483 (7th Cir.1988), in which the Seventh Circuit held that a district court could properly retain jurisdiction under Rule 69(a) to enforce a judgment against nonparties that were responsible for indemnifying the judgment debtors. Id. at 1487–90. The Seventh Circuit saw "no reason" to draw a distinction, for purposes of supplemental jurisdiction, between parties and nonparties, id. at 1488, as the nonparties' liability to the defendants was "related to the same events that underlie the original ... action." Id. at 1490.[9]

The State challenges the district court's reliance on Argento, arguing that: (1) a

---

7. We are aware of Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), in which eight justices held that the Eleventh Amendment barred a federal court from adjudicating a State's interest in specific property without the State's consent. Id. at 682, 102 S.Ct. at 3313 (plurality), id. at 703, 102 S.Ct. at 3324 (White, J., concurring in judgment in part, dissenting in part.) We conclude that Treasure Salvors does not control this case. Here, the district court would not be deciding the State's interest in a res, but would simply be enjoining state officials from attaching certain funds to which Hankins now holds title. The district court's order would not diminish or extinguish the State's claim against Hankins, and thus does not run counter to Treasure Salvors. Nothing in the

district court's order prevents the State from seeking reimbursement out of Hankins' other assets.

8. The State repeatedly asserts the judgment has been paid. Thus, the district court's order would only be aimed at releasing Hankins' account from the receiver's control.

9. See also Skevofilax v. Quigley, 810 F.2d 378, 385 (3d Cir.) (district court has ancillary jurisdiction to adjudicate a garnishment action by a judgment creditor against a nonparty to the action that may owe an obligation to indemnify the judgment debtor), cert. denied, 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987).

municipality, not a state, was obligated to indemnify the public employee in *Argento;* (2) the State of Missouri is not under a judicially enforceable obligation to indemnify its employees; (3) once a judgment is paid, Rule 69 does not apply; and (4) the supplemental proceedings in this case constituted a separate action over which the district court lacked jurisdiction.

Most of these arguments do not demand extensive discussion. The fact that *Argento* dealt with a municipality rather than a state is irrelevant for purposes of Rule 69. The State's Eleventh Amendment concerns simply do not bear on this issue.

We need not answer the State's argument that it is not under a judicially enforceable obligation to pay, as the State claims throughout its brief that the judgment has been satisfied and the record of Hankins' account shows a $3,234.22 credit from the State of Missouri on August 20, 1990.

The State next asserts that once a judgment is paid, Rule 69 is no longer applicable. We are not persuaded by this argument. The State has, in essence, devised what the district court called a "shell game" that allows it to "pay" a judgment while simultaneously recouping the proceeds. The actions of the State, in commencing the ex parte proceedings in state court and making its deposit in Hankins' overdrawn account, must be seen as an effort to prevent Hankins from collecting his judgment in the first place.

The State characterizes its claim for reimbursement as a completely independent claim brought under state law and properly adjudicated in state court. We reject this characterization. The issue is whether the State's claim for reimbursement is "adequately related," *see Argento*, 838 F.2d at 1490, to Hankins' original civil rights action to fall within the parameters of ancillary jurisdiction pursuant to Rule 69.

The State's statutory scheme—authorizing indemnification of state employees who are sued in connection with their official duties and then targeting such judgment proceeds for a reimbursement claim by the State—has the effect of defeating the efforts of any inmate to actually collect his judgment and completely vitiates any deterrent value these judgments possess. Because the State's scheme has the potential to severely frustrate the enforcement of federal rights in prisons, we conclude that the State's claim under the Missouri Incarceration Reimbursement Act is sufficiently related to Hankins' original civil rights action that it may properly be addressed in ancillary proceedings.[10] We observe that our discussion here necessarily touches on some of the issues that we address regarding preemption in Part III, *infra.*

Finally, the State attacks the district court's reliance on Mo.Rev.Stat. § 530.010, the Missouri statute governing writs of prohibition. The district court recognized that 42 U.S.C. § 1983 provides no mechanism for enforcing a judgment, *Hankins*, 759 F.Supp. at 571, so it relied on Rule 69, which provides that proceedings under its authority "shall be in accordance with the practice and procedure of the state in which the district court is held ... except that any statute of the United States governs to the extent that it is applicable." The State argues that the Missouri statute is intended to "prevent a usurpation of judicial power" and provides no procedural basis for the district court's actions.

■  We need not address the applicability of section 530.010 to this case. Even accepting the State's argument that it is irrelevant, we conclude that the district court retains "plenary power to enforce its commands." *Spain v. Mountanos*, 690 F.2d 742, 747 (9th Cir.1982). Where state law fails to supply the necessary procedure, or actually stands in the way of enforcement, the district court may take the necessary steps to ensure compliance with its judgment. *See Gary W. v. Louisiana,*

---

**10.** Because we conclude that the State's claim is not a separate and independent claim, we need not address its contentions that Hankins could not have removed the State's claim to federal court and that Hankins could not have asserted an independent claim for declaratory and injunctive relief in federal court because of the lack of subject matter jurisdiction.

622 F.2d 804, 806–07 (5th Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981); *Gates v. Collier*, 616 F.2d 1268, 1271–72 (5th Cir.1980). *See generally* 7 James W. Moore et al., Moore's Federal Practice ¶ 69.04[3] (1991). We also observe that the district court may rely on Fed.R.Civ.P. 70, which permits it to invoke its equitable powers in enforcing a judgment. *See Spain*, 690 F.2d at 744–47; *Gates*, 616 F.2d at 1271–72.

### III.

■ Under the Supremacy Clause, state law is preempted whenever it "contradicts or interferes with an Act of Congress." *Hayfield Northern R.R. Co. v. Chicago & N.W. Transp. Co.*, 467 U.S. 622, 627, 104 S.Ct. 2610, 2614, 81 L.Ed.2d 527 (1984). *See also Rose v. Arkansas State Police*, 479 U.S. 1, 3, 107 S.Ct. 334, 335, 93 L.Ed.2d 183 (1986). Federal law preempts state law not only where the two are plainly contradictory but also where "the incompatibility between [them] is discernible only through inference." *Hayfield Northern R.R. Co*, 467 U.S. at 627, 104 S.Ct. at 2614. When federal law does not expressly preempt state law, the court "must inquire more deeply into the intention of Congress and the scope of the pertinent state legislation." *Id.* at 628, 104 S.Ct. at 2614. Preemption in this instance will arise when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316 (1988) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

The purpose of section 1983 is two-fold: to compensate victims and to deter future deprivations of federal constitutional rights. *Owen v. City of Independence*, 445 U.S. 622, 651, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1239 (7th Cir.1984). In *Bell*, the Seventh Circuit refused to apply a Wisconsin statute that precluded damages to an estate for loss of life and also precluded recovery of punitive damages. The court concluded that both provisions undermined the purpose of section 1983. *Id.* at 1236–41. With regard to the punitive damages provision, the court stated: "To disallow punitive damages in Section 1983 actions solely on the basis of restrictive state tort law would seriously hamper the deterrence effect of Section 1983." *Id.* at 1241.

The jury in this case awarded Hankins $1 in nominal damages and $3,000 in punitive damages. To allow the State to largely recoup this award would be inimical to the goals of the federal statute. As the district court observed, "neither the State nor its employees would have the incentive to comply with federal and constitutional rights of prisoners." *Hankins*, 759 F.Supp. at 574.

■ We thus conclude that section 1983 preempts the Missouri Incarceration Reimbursement Act as it is applied in this case. To the extent that the Act permits the State to recoup the very monies it has paid to satisfy a section 1983 judgment against one of its employees, the Act is invalidated under the Supremacy Clause.

The State also argues that its claim under the Reimbursement Act is analogous to a counterclaim or setoff and should be permitted on that basis. This argument is beside the point when the issue is one of preemption.

### IV.

The State finally asserts that the district court erred in failing to abstain in deference to pending state judicial proceedings. We see no reason to apply the abstention doctrine where important federal interests are at stake and where the proceedings were ancillary to a judgment awarded in federal court.

For the foregoing reasons, we affirm the judgment of the district court.

BEAM, Circuit Judge, dissenting.

Because the majority opinion disregards accepted legal principles applicable to cases such as this, I respectfully dissent. Without reason or precedent, the district court, advancing dubious policy justifications, has

elevated the 42 U.S.C. § 1983 judgment against Finnel to a status that it does not merit. Further, the district court used an inapplicable procedural rule, Fed.R.Civ.P. 69(a), to cut a pathway for this prisoner-plaintiff through immunity barriers erected by the Constitution.

Finnel was an employee of the State of Missouri and, while serving in this capacity, violated the constitutional rights of Hankins. The cause of action was against Finnel in his personal capacity and sought to (and did) impose personal liability. The suit was not and could not have been an official capacity case. "[O]fficial capacity suits ... represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Of course, the Eleventh Amendment precluded a suit by Hankins directly against the State of Missouri. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). To repeat, the State of Missouri was not and could not have been the object of Hankins' claim.

The state enters the picture in only a limited way—through its statute-making powers. Missouri, furnishing an additional benefit to its workers, provides and pays for a lawyer when a state employee is sued for task-related activities and, through the State Legal Expense Fund, Mo.Rev.Stat. § 105.711 (Supp.1991), indemnifies the employee for any judgment rendered. Some states use tax money to buy commercial insurance coverage while others, like Missouri, appropriate an indemnity fund, a form of self-insurance. So Finnel was, in essence, provided indemnity coverage by the State to satisfy his liability to Hankins.

The judgment was entered and the State paid off. It satisfied the judgment, as Finnel's indemnitor, by paying the money into Hankins' account at the institution. Since Hankins could not carry cash around in prison, it was necessary for the money to be handled this way. Perhaps if he had had another bank account or a legal guardian, his lawyer could have had the tender transferred to him in some other way. Presumably Missouri could also have paid the money into the registry of the federal court. In any event, Missouri had (and should have had) access to the funds now owned by Hankins. That the satisfaction of judgment was handled through Hankins' prison account or in any other way is irrelevant to the legitimate issues in this case.

In a separate state court proceeding, under the Missouri Incarceration Reimbursement Act, Mo.Rev.Stat. §§ 217.825–217.841 (Supp.1991), the State impounded the money and sought a judgment against Hankins for ninety percent of the judgment payment made into the prison account. As noted by the majority, the Reimbursement Act seeks money to repay the State for costs of Hankins' incarceration. No attack is made on the validity of the Reimbursement Act, constitutional or otherwise.[1] Had Hankins inherited money or obtained a federal court judgment for breach of contract or through a tort claim, the Act would presumably have functioned without this interference from the federal district court. However, since this was a section 1983 judgment, the district court, for reasons difficult to follow from the clear language of the rule and the facts at work here, applied Fed.R.Civ.P. 69(a)[2] in an effort to

---

1. I suspect there are several avenues of assault available, not limited to arguments that a reimbursement amounts to an additional criminal fine or that court ordered restitution arising outside the criminal process violates due process considerations. Nothing of this nature is referred to in the record and it is doubtful that such attacks, if made, would prevail in the final analysis.

2. Federal Rule of Civil Procedure 69(a) states: Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including

help the prisoner defeat the claim of the State, a nonparty to the underlying action in federal court. Since Missouri, as indemnitor of Finnel, had, in essence, paid over to creditor Hankins the full amount of the federal court judgment, this rule was simply not applicable. The rule outlines a process to enforce an unpaid judgment through a writ of execution. When a third party holds funds of a judgment debtor, Rule 69(a) may be used to reach the funds. Here, there were no such funds remaining in the hands of the indemnitor, they were in Hankins' prison account.

The majority relies upon *Argento v. Village of Melrose Park,* 838 F.2d 1483 (7th Cir.1988), for support of the use of a Rule 69(a) procedure. Beyond the fact that the dissent in *Argento* presents the better reasoned argument, the case, and all the cases cited by the *Argento* majority, are inapposite here. None of the actions involved a sovereign state with Eleventh Amendment protections, they involved governmental subdivisions subject to being made parties to the action in the first instance. Further, *Argento* presented a situation where the section 1983 judgment against the employees remained unsatisfied, a scenario, as earlier indicated, we do not face in this matter.

The second error more directly involves the Eleventh Amendment. In support of some supposed public policy consideration involving section 1983 actions,[3] the district court and the majority seek to blur the line drawn by the Supreme Court which separates a state from its employees in this kind of litigation. The reasoning employed by the district court and the majority runs upstream from the unambiguous holdings of the Supreme Court. For instance, in

*Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), a successful section 1983 plaintiff sought to collect attorney fees allowed by 42 U.S.C. § 1988 from the Commonwealth. "[I]t is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Id.* at 167–68, 105 S.Ct. at 3106. The Supreme Court further stated that when a party prevails against one party it has no entitlements against even another party, let alone a nonparty. *Id.* at 168, 105 S.Ct. at 3106. In *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the Supreme Court chastised the Sixth Circuit for failing to carefully adhere to the personal-official distinction in section 1983 litigation. *Id.* at 473, 105 S.Ct. at 878.

The majority contends, in the face of this concept, that the Missouri indemnity fund legislation and/or the Missouri Reimbursement Act, jointly or severally, work an implied waiver of Eleventh Amendment immunity sufficient to bring the State into this federal court garnishment proceeding. The law is to the contrary. If waiver occurred as a result of the indemnity scheme or the Reimbursement Act, Missouri should have been made a party defendant in the underlying suit, not brought in through the back door as a quasi party. More importantly, however, applying solidly established precedent, waiver did not occur.

The Supreme Court has repeatedly rejected constructive waiver arguments such as those made here and has established that waiver can be found "only where stat-

the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

**3.** The district court concluded that permitting the State to seize this section 1983 damage award would disincline prisoners from bringing such damage claims and would destroy the inducement for a state and its employees to comply with the federal Constitution. Any witness to the flood of prisoner petitions from the correctional facilities of this country will recognize

this argument as fanciful. Further, section 1983 carries with it equitable as well as legal remedies. The Missouri Act confiscates only a portion of each judgment and, as in this case, the award of attorney fees to the plaintiff often, if not usually, far exceeds the amount of the section 1983 judgment. With these remedies and this knowledge in mind, it is almost certain that the actions of Missouri in this case, even if successful, will have absolutely no effect upon the number of prisoner claims asserted.

ed 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). The Court has continuously applied this standard, construing even express state waivers of sovereign immunity very narrowly. *See Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1033–34, 67 L.Ed.2d 132 (1981) (per curiam) (general statutory waiver of state agency's immunity applies only to suits in state courts and not federal courts); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (state constitution's general waiver of state's sovereign immunity applies only to suits in state courts and not federal courts as well).

Here, the Missouri indemnity statute goes even a step further, it specifically disavows any waiver of Eleventh Amendment immunity. Even ignoring the express disavowal of waiver, the holdings of the district court and the majority are wrong given the nearly insurmountable presumption against constructive waivers of Eleventh Amendment immunity. *See Edelman*, 415 U.S. at 671–74, 94 S.Ct. at 1359–61.

In *Williams v. Bennett*, 689 F.2d 1370, 1377–79 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), and *Gamble v. Florida Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1516–18 (11th Cir.1986), the Eleventh Circuit has twice considered whether indemnity statutes waive immunity. *Williams* examined an Alabama statute, and, *Gamble*, as indicated, analyzed Florida law. The Alabama statute discussed in *Williams* is comparable to the Missouri legislation; it contains an express disavowal of waiver. The Eleventh Circuit found the indemnity language to be an employee benefit "analogous to liability insurance for any … correctional employee … sued individually for acts arising in the course of employment." *Williams*, 689 F.2d at 1377. A situation

squarely on point with this case. Our holding should be the same as that of the *Williams* court in terms of employee benefits and waiver of immunity.

The majority's use of the Reimbursement Act as a source of limited waiver is puzzling, especially since Rule 69(a) is used as the vehicle to force payment of this judgment. Although the Act's definition of "assets" includes "[a] money judgment received by the offender from the state as a result of a civil action," Mo.Rev.Stat. § 217.827(1)(a)b, it is difficult to even speculate how these words used by the Missouri legislature remotely approach a waiver of sovereign immunity "by the most express language or by such overwhelming implications from the text," *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361. This section merely defines the assets subject to state claims under the Reimbursement Act, it does not implicate, much less waive, Missouri's immunity in the separate and distinct federal court litigation that provides the source of the assets.

The majority nonetheless finds an implied waiver of immunity by concluding that Missouri seeks to take advantage of the judgment in Hankins' section 1983 suit through the Reimbursement Act. The majority cites *United States v. DCS Dev. Corp.*, 590 F.Supp. 1117 (W.D.N.Y.1984), and *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), to support its finding. The majority ignores, however, that the fundamental question addressed in these cases was the extent to which a state waives its immunity once it has voluntarily made an appearance in a suit. An appearance in the litigation is a prerequisite to applying the waiver standard, i.e., whether the state seeks to take advantage of the suit. As discussed above, Missouri did not waive its immunity in the section 1983 suit by satisfying Hankins' judgment. Missouri, therefore, has not appeared in the suit and does not seek to take advantage of it in the sense that *DCS Dev. Corp.* and *Sosna* contemplate. Instead, Missouri's position is comparable to that of a tort victim who decides to sue a previously insolvent tortfeasor in another court upon learning that the tortfeasor has received a judgment from a third party. By overlooking the lack of an appearance by Missouri

in Hankins' section 1983 suit, the majority stretches the holdings of *DCS Dev. Corp.* and *Sosna* beyond their intended and reasonable scope.

In sum, the majority now establishes precedent for this circuit based upon erroneous policy arguments and a misapplication of established law.[4] Accordingly, I would reverse the district court, set aside the Fed.R.Civ.P. 69(a) proceeding and let Hankins and the state settle their differences in the proper forum, the Missouri courts.

---

**4.** Besides failing to justify the unprecedented status it accords a section 1983 judgment, the majority's holding fails to provide a workable framework for future adjudication. For example, it is far from clear whether the majority's holding would preclude a state from seeking reimbursement for prison expenses from the proceeds of a prisoner's section 1983 suit unrelated to the conditions of his imprisonment. Presumably such reimbursement would undermine the purposes of section 1983 as directly as the claim for reimbursement in the present case supposedly does. As this example demonstrates, any attempt to restrict the scope of the majority's holding would simply reveal the holding's inherently arbitrary nature.