**Willie WILLIAMS, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**Michael P. LANE, et al., Defendants.**

**No. 81 C 355.**

United States District Court, N.D. Illinois.

April 20, 1993.

Jack A. Rovner, Hugh J. Totten, Peter B. McCutchen, Kirkland & Ellis, Chicago, IL, for plaintiffs.

Sandra Castillo, Asst. Atty. Gen., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action for the enforcement of constitutional rights of a class of protective custody inmates at Stateville Correctional Center has had a long and tortuous history (both before and after the entry of this Court's opinion reported at 646 F.Supp. 1379 (N.D.Ill.1986) and its affirmance reported at 851 F.2d 867 (7th Cir.1988)). At the end of the proceed-

ings the money damages aspect of plaintiffs' claim was resolved by the entry into a Settlement Agreement (the "Agreement") between the Illinois Department of Corrections ("Department") and the plaintiff class. On May 13, 1991 this Court approved the Agreement as fair, reasonable and adequate.

Under the Agreement Department undertook to make all payments of the damages for which its officers were liable by reason of their violations of plaintiffs' constitutional rights. Department did so pursuant to the Illinois statute providing for such indemnification (5 ILCS 350/1 and 350/2, formerly Ill.Rev.Stat. ch. 127, ¶¶ 1301–1302).

But despite Department's express contractual undertakings in Agreement ¶ 1, it has not honored those commitments as to approximately 100 class members. Instead the Illinois State Comptroller has diverted the payments due to those plaintiffs under the Agreement to the benefit of other state agencies, purportedly acting under 15 ILCS 405/10.05, 10.05a and 10.05b (formerly Ill. Rev.Stat. ch. 15, ¶¶ 210.05, 210.05a and 210.-05b).

Plaintiff class member Napoleon Hartsfield lodged a letter of complaint on that score with this Court, which this Court in turn transmitted to appointed counsel for the class for their attention. Class counsel have investigated the matter and have now moved to enforce the Agreement. That motion has been fully briefed and is ready for decision. For the reasons stated in this memorandum opinion and order, the motion is granted.

█ Department advances two arguments in response to the motion—one is essentially the Pontius Pilate defense that Department has no responsibility for the action of the Comptroller as an independent state official (*Matthew* 27:24), while Department's other contention urges that it is immune under the Eleventh Amendment. Both arguments are devoid of merit and may be dispatched swiftly.

As for the first argument, Agreement ¶ A.1 set out Department's express agreement that it would cause to be paid all the damages (as defined by the Agreement) for which its officers were personally liable. Agreement ¶ C.9 specified when and how Department would make those payments. Having made arrangements for those payments to be made through the Comptroller as its disbursing agent, Department cannot wash its hands of responsibility for violations of the Agreement on the ground that its agent (and not Department itself) had committed the breach.

█ As for Department's Eleventh Amendment argument, it ignores two controlling doctrines. First, Department as the indemnitor for the individual defendants has stepped into their shoes, so that it cannot interpose any defenses or make any setoffs that were not available to the individuals themselves (see *Hankins v. Finnel*, 964 F.2d 853, 857 (8th Cir.1992)).[1] Second, *Hankins, id.* at 856 teaches—in a parallel context— that Department's entry into the Agreement itself waived any potential Eleventh Amendment immunity through its conduct (cf. such other waiver-by-conduct decisions as *Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–84, 27 L.Ed. 780 (1883); *Garrity v. Sununu*, 752 F.2d 727, 738 (1st Cir.1984); *Paul N. Howard Co. v. Puerto Rico Aquaduct Sewer Auth.*, 744 F.2d 880, 886 (1st Cir. 1984)). To the same effect, Department's voluntary entry into the Agreement itself waived such immunity (see *New York State Ass'n for Retarded Children, Inc. v. Carey*, 596 F.2d 27, 39 (2d Cir.1979)). Indeed, requiring Department to comply with its voluntarily undertaken contractual obligations really involves "vindicat[ing] the authority of the court"—the proposition that Department's own Mem. 6 states as an exception to the State's right to Eleventh Amendment insulation, citing *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288 (7th Cir.1993).

---

1. Department mixes apples with oranges when it invokes the case law that, on the other side of the coin, holds that a State's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign (see, e.g., *Benning v. Board of Regents of Regency Universities*, 928 F.2d 775, 778–79 (7th Cir.1991)). As *Hankins* 964 F.2d at 857 pointed out, that proposition comes into play in a quite different context: when courts regularly reject the claim that the existence of a voluntary indemnification agreement converts an individual-capacity lawsuit to an official-capacity lawsuit. That is entirely different from the issue before this Court, and the principle is wholly irrelevant here.

Accordingly plaintiffs' motion to enforce the Agreement is granted. Department is ordered to cause the withheld payments to be made forthwith, together with accrued interest as required under Agreement ¶ C.11.