# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2135

_____

| | | |
|---|---|---|
| Union Electric Company, doing business as Ameren UE, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Missouri Department of Conservation; John D. Hoskins, in his official capacity as Director of the Missouri Department of Conservation; Stephen C. Bradford, in his official capacity as Commissioner of the Conservation Commission; Anita B. Gorman, in her official capacity as Commissioner of the Conservation Commission; Cynthia Metcalfe, in her official capacity as Commissioner of the Conservation Commission; Howard L. Wood, in his official capacity as Commissioner of Conservation Commission, | * | Appeal from the United States District Court for the Western District of Missouri. |
| | * | |
| Defendants - Appellees. | * | |
| ----------------------------- | * | |
| State of Missouri; Missouri Clean Water Commission, | * | |
| | * | |
| Amici on Behalf of Appellees. | * | |

_____

Submitted: December 17, 2003

Filed: April 9, 2004

Amended: April 30, 2004

_____

Before MELLOY, MCMILLIAN, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This is a suit by AmerenUE, an electric utility, against the Missouri Department of Conservation ("MDOC") and, in their official capacities, the director of MDOC and four commissioners of the Missouri Conservation Commission. We affirm the District Court's[1] dismissal of the action as barred by the Eleventh Amendment.

AmerenUE, which is licensed and regulated by the Federal Energy Regulatory Commission, operates Bagnell Dam, a hydroelectric power plant on the Osage River. It was the damming of the Osage River by Bagnell Dam that created the Lake of the Ozarks. In the Spring of 2002, a significant fish kill occurred below the dam. The parties agree that the fish kill occurred soon after the Army Corps of Engineers released a substantial amount of water from the Harry S. Truman Dam, which is upstream from Bagnell Dam. MDOC, believing the fish kill was preventable and was caused by AmerenUE's negligence in failing to prevent it, demanded that AmerenUE provide compensation for the alleged $3.256 million worth of fish that were destroyed. When MDOC and AmerenUE were unable to agree on compensation for

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

the lost fish, AmerenUE filed this suit in the District Court seeking a declaratory judgment and an injunction. Specifically, AmerenUE sought a declaration that the Federal Power Act, 16 U.S.C. §§ 791a–828c (2000), preempts MDOC from imposing liability on AmerenUE for the dead fish and sought an injunction to prevent MDOC from bringing any state-court or administrative actions to impose liability on the company for the lost fish. After AmerenUE filed its federal action, MDOC filed suit against AmerenUE in state court seeking precisely that relief, namely, damages for the loss of the fish. Later, the Missouri Attorney General filed an application to intervene in the federal case and requested that the case be dismissed on a number of grounds, including the State's Eleventh Amendment immunity. Thereafter, without ruling on the merits of the Attorney General's application to intervene, the District Court granted judgment to all of the defendants on Eleventh Amendment grounds, dismissed the case, and denied the application to intervene as moot. AmerenUE appeals the dismissal of its suit. We review a district court's dismissal of an action on Eleventh Amendment grounds de novo. Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (per curiam), cert. denied, 513 U.S. 829 (1994).

AmerenUE urges that under Ex Parte Young, 209 U.S. 123 (1908) (holding that Eleventh Amendment does not bar suits for prospective injunctive relief against state officials in their official capacity), its action against the individual defendants in their official capacity is not barred by the Eleventh Amendment. The company also argues that the defendants waived any Eleventh Amendment immunity the State enjoyed by entering a general appearance in response to the lawsuit and, alternatively, that the Attorney General waived the State's immunity by moving to intervene in the action. We consider AmerenUE's claims seriatim.

Our inquiry into whether the Ex Parte Young fiction avoids the Eleventh Amendment's bar to suits against the States does not include an inquiry into the merits of the claim. Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). We may, however, inquire into whether an applicable federal statutory

scheme evidences an implicit or explicit intent to exclude Ex Parte Young actions, id. at 647, and we may also question whether the suit and the remedy it seeks "implicate[] special sovereignty interests" such that an Ex Parte Young action will not lie. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997).

Here, we conclude that the Federal Power Act ("the Act") unmistakably evidences an intent to exclude licensees such as AmerenUE from maintaining an Ex Parte Young action seeking to prevent a State from recovering damages to its property resulting from the licensee's negligence in the operation of the licensed power project. Cf. Seminole Tribe, 517 U.S. 44, 74 (1996) (holding that existence of a detailed remedial scheme shows Congressional intent to prohibit recourse to the Ex Parte Young fiction). In relevant part, the Act provides:

> Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license and in no event shall the United States be liable therefor.

16 U.S.C. § 803(c) (2000). We have no occasion to consider whether this provision—in combination with the rest of the statutory scheme—demonstrates Congressional intent to exclude all Ex Parte Young actions under the Act. In the circumstances of this case, it is clear that the Act bars AmerenUE's federal-court action. Section 803(c) of the Act deals with licensee liability and is part of the Act's remedial scheme, which relies on damage actions, by parties whose property is injured by a licensee's operation of a licensed power project, to provide a remedy to those whose property is so injured. The Act does not draw any distinction between damage actions instituted by States and those instituted by private parties. The remedy that AmerenUE seeks, which would enjoin the State from bringing or maintaining an action to recover damages to its property allegedly caused by AmerenUE's negligent operation of Bagnell Dam, is plainly inconsistent with the

Act.[2] Accordingly, the District Court's dismissal of the case on Eleventh Amendment grounds was correct inasmuch as the Act itself forecloses application of the Ex Parte Young exception to the State's assertion of Eleventh Amendment immunity. Because the Ex Parte Young exception thus cannot successfully be invoked in this case, and AmerenUE therefore cannot overcome the Eleventh Amendment bar to such an action against these State defendants, there is no need for us to inquire whether this action implicates any "special sovereignty interests" as in Coeur d'Alene, 521 U.S. at 281.

AmerenUE urges that even if the Eleventh Amendment was initially available to the defendants as a bar from suit, it was waived either by MDOC or by the Attorney General. Specifically, AmerenUE contends that MDOC waived the State's sovereign immunity when it made a general appearance and defended the suit on the merits (MDOC did not raise its assertion of Eleventh Amendment immunity until its motion-to-dismiss reply brief). Alternatively, AmerenUE argues that the State's Eleventh Amendment immunity was waived when the Attorney General filed an application to intervene and to dismiss the action.

In support of its waiver claims, AmerenUE submits that our decision in Hankins v. Finnel, 964 F.2d 853 (8th Cir.), cert. denied, 506 U.S. 1013 (1992), stands for the proposition that whenever a State defendant makes a general appearance in federal court and defends an action on the merits, it waives its Eleventh Amendment immunity. We do not believe that Hankins can bear the weight AmerenUE places on it. In Hankins, the State of Missouri defended a § 1983 suit brought in federal court by a prisoner who sought damages from a state employee. Id. at 854–55. At trial, the employee suffered an adverse judgment and was ordered to pay damages. The State

---

[2]AmerenUE does not contest the proposition that the destroyed fish were the property of the State of Missouri. See Mo. Rev. Stat. § 252.030 (2000) ("The ownership of and title to all wildlife of and within the state, whether resident, migratory or imported, dead or alive, are hereby declared to be in the state of Missouri.").

agreed to indemnify its employee pursuant to the "State Legal Expense Fund," see Mo. Rev. Stat. § 105.711 (2000). Before it satisfied the judgment, the State sought to recoup the judgment amount by instituting proceedings in state court under the Missouri Incarceration Reimbursement Act, see id. §§ 217.825–841, which permits the Attorney General to institute a suit seeking reimbursement for up to ninety percent of the costs of a prisoner's confinement. Hankins, 964 F.2d at 854–55. After the state court appointed a receiver to hold the funds, the inmate's account was debited for the amount of the judgment plus interest and—that same day—the same amount was paid into the inmate's account in satisfaction of the judgment. Id. Thereafter, the inmate returned to federal court where he sought a writ of mandamus to stay the state court proceedings and a writ "to proceed in aid of execution on the judgment," whereupon the State asserted its Eleventh Amendment immunity from suit. Id. at 855. The District Court held that the State had waived its Eleventh Amendment immunity and enjoined the State from attaching the funds in the inmate's account. Id. The State appealed this decision and we affirmed. In our decision, we noted that the State was not a defendant in the underlying § 1983 suit and had not entered a general appearance therein, but we nevertheless concluded that the State had waived its Eleventh Amendment immunity with respect to actions in federal court arising from the State's attempt to recover the amount paid into the inmate's account in satisfaction of the judgment in the § 1983 case. Id. at 858. In short, it was the State's voluntary act of paying the judgment, and then attempting to recoup the amount paid, that was the basis of the waiver. Id. at 857–58. Hankins thus is a special case of limited application and does not advance AmerenUE's waiver claim.

The general rule regarding waiver, which was recently reiterated by the Supreme Court, is that when a State voluntarily invokes federal jurisdiction "'and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.'" Lapides v. Bd. of Regents, 535 U.S. 613, 619 (2002) (quoting Gunter v. Atl. Coast Line R.R. Co., 200 U.S. 273, 284 (1906)). Thus, a State's Eleventh

Amendment immunity may be waived if a state actor with the power to bring suit in federal court invokes federal jurisdiction in a *clear* and *voluntary* manner. Id. at 619–22. In Lapides, these criteria were satisfied because the Georgia Attorney General was authorized by state statute "'[t]o represent the state in all civil actions tried in any court,'" id. at 621 (quoting Ga. Code Ann. § 45-15-3(6) (1990)), and the invocation of federal jurisdiction was clear and voluntary because the Attorney General chose to remove the case from state court, where it originated. In contrast, the elements required to show clear and voluntary action constituting a waiver of Eleventh Amendment immunity by a State defendant are absent here.

Regarding MDOC, AmerenUE has not demonstrated that MDOC has the power to bring suit in federal court. Having this power is, under Lapides, a prerequisite for a state actor to have the ability to waive the State's Eleventh Amendment immunity. Even if MDOC has this power, it is clear that MDOC, which is a defendant in this lawsuit, has not voluntarily invoked federal jurisdiction by entering a general appearance and defending against AmerenUE's suit. See, e.g., Fromm v. Comm'n of Veterans Affairs, 220 F.3d 887, 888–90 (8th Cir. 2000) (en banc) (holding that there was no waiver where attorney general appeared in federal court, answered a complaint, responded to discovery, and later moved to amend its answer to the complaint in order to raise State's Eleventh Amendment immunity). Moreover, MDOC did assert the State's Eleventh Amendment immunity in the dismissal proceedings and it has continued to press its claim of entitlement to such immunity. As for the Missouri Attorney General, state law authorizes him to "institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity . . . ." Mo. Rev. Stat. § 27.060 (2000); see also Mo. Const. art IV, § 12 (establishing office of Attorney General). With this power, the Attorney General *could* waive the State's Eleventh Amendment immunity if he invoked federal jurisdiction in a clear and voluntary manner. Cf. Beatty v. Metro. St. Louis Sewer Dist., 914 S.W.2d 791, 796 (Mo. 1995) (noting that State's sovereign immunity may be waived by voluntary appearance and submission to jurisdiction). As we already

have noted, the State is a defendant and, consequently, has not voluntarily invoked this court's jurisdiction. AmerenUE's effort to cast the Attorney General's application to intervene in this case as a voluntary invocation of federal jurisdiction is fruitless: the State, because of AmerenUE's suit against MDOC and the individual State officials in their official capacity, was already a party-defendant, and the Attorney General's application to intervene does not change this fact.[3] Moreover, a stated aim of the application was to enable the Attorney General to argue for dismissal of the case on, *inter alia*, Eleventh Amendment grounds. We are thoroughly satisfied that no waiver of the State's Eleventh Amendment immunity occurred.

We conclude that the District Court did not err when it dismissed this suit as barred by the Eleventh Amendment. For the reasons stated, the judgment of the District Court dismissing this action is affirmed.

_____

[3]Our conclusion that the State was already a party to the action when the Attorney General moved to intervene necessarily means we reject AmerenUE's claim that MDOC is not an arm of the State of Missouri for Eleventh Amendment purposes.