**Corvelle BEEKS; Donta T. McKenzie, Plaintiffs–Appellees,**

**Anthony Quinn; Larry Starks, Jr., Plaintiffs,**

v.

**Thomas C. HUNDLEY; John Emmett, Defendants–Appellants,**

**John Henry; Paul W. Grossheim, Defendants.**

No. 93–2754.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1994.

Decided Sept. 7, 1994.

Layne Lindebak, Des Moines, IA, argued, for appellants.

Guy R. Cook, Des Moines, IA, argued, for appellees.

Before RICHARD S. ARNOLD, Chief Judge, MAGILL and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

In *Hankins v. Finnel,* 964 F.2d 853 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), an inmate recovered a money judgment against a Missouri prison official under 42 U.S.C. § 1983. The State sought to apply the inmate's damage recovery to pay the costs of his incarceration under the Missouri Incarceration Reimbursement Act. We held that § 1983 preempted such recoupment because it is "inimical to the goals of the federal statute." *Hankins,* 964 F.2d at 861. The issue in this case is whether § 1983 also preempts the seizure of an inmate's § 1983 damage recovery to pay victim restitution under Chapter 910 of the Iowa Code. The district court considered *Hankins* controlling. We disagree and therefore reverse.

## I.

In all criminal cases except simple misdemeanors, Iowa's victim restitution statute requires that the offender be ordered to pay restitution to the victims of his criminal activities. *See* Iowa Code Ann. § 910.2. The order to pay restitution "constitutes a judgment and lien against all property of a liable defendant." § 910.7A(1). Payments are made to the county clerk of court, who disburses restitution to the victims. *See* § 910.9. Offenders must make restitution payments while in prison pursuant to a restitution plan prepared by the Department of Corrections. *See* § 910.5(1). Prison officials may make restitution "deductions" from an inmate's account of up to fifty percent of the inmate's prison earnings or allowance. Iowa Admin.Code § 201–20.11(7). In addition, restitution may be deducted "from a credit to an inmate's account from an outside source by written authorization from the inmate, approval from the warden/superintendent, or by court order." Iowa Admin.Code § 201–20.11(10).

In this action, four inmates of the Iowa State Penitentiary recovered a money judgment for violations of their Fourteenth Amendment rights, and this court affirmed. *See Quinn v. Nix*, 983 F.2d 115 (8th Cir. 1993). The State delivered to plaintiffs' counsel warrants payable to plaintiffs for the full amount of the judgment, with interest. When inmates Corvelle Beeks and Donta McKenzie later deposited the judgment proceeds in their prison accounts, prison officials seized all but $50 from each inmate to satisfy his obligations under the victim restitution act.

Beeks and McKenzie then applied to the district court for relief. Invoking its jurisdiction under Fed.R.Civ.P. 69(a), that court held the victim restitution act preempted by § 1983 as applied in *Hankins:* "[t]he teaching of *Hankins* is that section 1983 damages are exempt from attachment or from similar seizures that state laws would otherwise allow." In addition, the court noted that the State's practice of insisting that a portion of § 1983 settlements be diverted to restitution "probably has a chilling effect on settlements." "[T]he benefits of restitution are outweighed by the obstacles it creates for alternative dispute resolution, the efficient administration of justice, the protection of inmate rights, and the deterrence of unconstitutional conduct by persons acting under color of authority." It ordered the State to return to Beeks and McKenzie the judgment proceeds that were deducted from their inmate accounts.[1] The State appealed, and we granted a stay of the order to return the judgment proceeds.

## II.

■ At the outset, we confront a jurisdictional issue not addressed by the parties. The district court correctly proceeded under Rule 69(a). That Rule, which we invoked in *Hankins*, "is a procedural mechanism for a court's exercise of its inherent jurisdiction to enforce its judgment in a supplemental proceeding." *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1487 (7th Cir.1988). But this inherent jurisdiction only "continues until th[e] judgment shall be satisfied." *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867). While the court clearly had jurisdiction to consider whether the State's payment satisfied the § 1983 judgment, it failed to address that question.

In *Hankins*, we concluded that payment of the judgment did not end the district court's jurisdiction to enforce its judgment because that payment was a mere "shell game"—the State had commenced an action in state court, obtained a court order appointing a receiver to hold any funds in the inmate's account, and then deposited the judgment proceeds directly into that effectively-frozen account. Here, on the other hand, the State unconditionally paid the judgment proceeds to counsel for the inmates. Only when counsel transferred their share of the proceeds to Beeks and McKenzie, and they in turn put the money in their prison accounts, did prison officials implement the victim restitution act. By this point, the § 1983 judgment had been satisfied and the district court's jurisdiction to enforce that judgment exhausted, which suggests that we should vacate the court's order as beyond its jurisdiction. However, the inmates initially sought relief *pro se*, and the State did not raise this jurisdictional issue. Since the district court could have considered the preemption issue in a new § 1983 action, we will proceed to the merits of that issue.

## III.

■ Because § 1983 does not expressly preempt state law, we must determine whether application of Iowa's victim restitution act in this case actually conflicts with § 1983. The general principles of conflict

---

1. The third plaintiff, Anthony Quinn, was not in prison when he received his portion of the judgment, so he has no interest in this dispute. The fourth plaintiff, Larry Starks, is still in prison, but the district court did not grant Starks specific relief because "[a]pparently, none of Starks' judgment proceeds were applied to restitution."

We are advised that, after this appeal was pending, prison officials deducted restitution from Starks's account as well, which has caused some confusion as to whether Starks is a party to this appeal. Given our disposition on the merits, we see no need to decide that question.

preemption are rather contradictory. On the one hand, "[w]e are reluctant to infer preemption" because "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Building & Constr. Trades Council v. Associated Builders and Contractors,* —— U.S. ——, ——, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993) (internal quotations omitted). On the other hand, the commonly stated test for conflict preemption is quite broad—state law is preempted if it "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"—and was expressly applied in a § 1983 preemption case. *Felder v. Casey,* 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988) (internal quotations omitted). Since the purposes and objectives of § 1983 are themselves broad— "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law," *Robertson v. Wegmann,* 436 U.S. 584, 590–91, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978)—the preemptive sweep of § 1983 is obviously considerable. However, *Robertson* confirmed that § 1983 preemption is not without limits: "A state statute cannot be considered 'inconsistent' with [§ 1983] merely because the statute causes the plaintiff to lose the litigation," 436 U.S. at 593.

In applying these conflict preemption principles to § 1983, the Supreme Court observed that "the central purpose [of § 1983] is to provide compensatory relief to those deprived of their federal rights by state actors." *Felder,* 487 U.S. at 141, 108 S.Ct. at 2308. Yet neither the district court nor appellees discuss this dominant purpose. In our view, application of Iowa's victim restitution act does not significantly affect § 1983's compensatory purpose. To be sure, Beeks and McKenzie have been deprived of the immediate benefit of the diverted portions of their § 1983 money judgment. But under the Iowa statute, the diverted payments satisfy a portion of the inmates' restitution orders—debts that constitute a judgment and

lien against all their property and, significantly, are enforceable after their prison sentences have been served. Thus, from a financial standpoint, the inmates received virtually all the benefit of their § 1983 money judgment when the proceeds were applied to satisfy their restitution debts.

■ Another important purpose of § 1983 is "to serve as a deterrent against future constitutional deprivations." *Owen v. City of Independence,* 445 U.S. 622, 651, 100 S.Ct. 1398, 1416, 63 L.Ed.2d 673 (1980). In *Hankins,* we concluded that the goal of deterrence would be intolerably undermined if the State could recover reimbursable costs of incarceration from "the very monies" it paid on account of the unlawful conduct of prison officials. We observed that "neither the State nor its employees would have the incentive to comply with federal and constitutional rights of prisoners" if the State's penal system could largely recoup this § 1983 award. 964 F.2d at 861.

This case does not present the same concerns. Here, the money was applied to the inmates' pre-existing obligations to the victims of their crimes. In most cases, crime victims are private persons or institutions. In those cases, although prison officials deduct the money from the inmates' accounts and transfer it to another public official (the clerk of court in the county of sentencing), the State does not ultimately receive the § 1983 proceeds. In some cases, the State may retain some of the restitution proceeds, either as court costs,[2] or because the State itself was a victim of the inmate's crime. But even then, Iowa's victim restitution regime will not permit the state institution whose employees were responsible for the § 1983 violation to recoup the money judgment. In these circumstances, we conclude that victim restitution does not defeat § 1983's deterrence goal.

Although § 1983 has powerful preemptive force, we must be reluctant to infer preemption in areas of traditional state power. *See Cipollone v. Liggett Group, Inc.,* —— U.S.

---

2. Restitution under the Iowa act includes court costs, court-appointed attorney's fees, and expenses for public defenders, but these costs "shall not be withheld by the clerk of court until

all victims have been paid in full." Iowa Code Ann. § 910.9. Both Beeks and McKenzie owe more in victim restitution than the amounts deducted from their prison accounts.

——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *California v. ARC America Corp.,* 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). The States have long been the primary regulators of crime and punishment. *See Knapp v. Schweitzer,* 357 U.S. 371, 374–78, 78 S.Ct. 1302, 1304–05, 2 L.Ed.2d 1393 (1958). Restitution is a long-accepted form of punishment, dating as far back as the Code of Hammurabi. *See* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv.L.Rev. 931, 933 & n. 18 (1984). There is no indication that the Iowa victim restitution act was intended to frustrate § 1983 inmate plaintiffs, or to reduce the deterrent effect of § 1983 judgments—the statute uniformly affects all offenders, not only those who have prevailed in a federal civil rights action. While we share the district court's concern that victim restitution may adversely affect that court's docket by discouraging settlements or alternative dispute resolution, that is not a sufficient basis to preempt the State's admittedly strong interest in its victim restitution program.

On the same day the district court ruled in this case, we held in *Curtis v. City of Des Moines,* 995 F.2d 125, 129 (8th Cir.1993), that Iowa lien law governs the priorities of private creditors who assert rights to an inmate's § 1983 damage recovery. *Curtis,* decided after *Hankins,* confirms that § 1983 judgment proceeds are not, as the district court believed, categorically beyond the reach of creditor remedies under state law.[3] Because enforcement of the Iowa victim reimbursement statute is not inimical to the core purposes of § 1983, *Curtis* applies and we must reverse.

### IV.

Beeks and McKenzie also argue that state law and their due process rights were violated by the manner in which victim restitution was deducted from their prison accounts. These issues were not considered by the district court. Moreover, they were beyond that court's jurisdiction. As long as enforcement of Iowa's victim restitution statute is

not preempted, there can be no question that the § 1983 judgment has been satisfied. What happened to the judgment proceeds after that may or may not give rise to a new controversy within the jurisdiction of the federal courts. But that controversy is not within the inherent Rule 69 jurisdiction of the court in this case, nor were these additional issues fairly raised by the inmates' informal *pro se* request for relief.

The May 28, 1993, order of the district court is reversed.

---

**3.** For example, appellees conceded at oral argument that § 1983 would not preempt enforcement of a state tax lien against their § 1983 judgment proceeds.