_____

No. 95-1516
_____

Ronald A. Mahers,                    *
                                     *
     Plaintiff/Appellee              *
                                     *
     v.                              *
                                     *
Sally Chandler Halford,              *
                                     *
     Defendant/Appellant,            *
                                     *
Gary Dean Snow,                      *
                                     *
     Plaintiff/Appellee,             *
                                     *
     v.                              *
                                     *
Thomas Hundley; Sally Chandler       *     Appeal from the United States
Halford; Ruth McVeigh,               *     District Court for the
                                     *     Southern District of Iowa.
     Defendants/Appellants,          *
                                     *
Roger Gene Van Hoff,                 *
                                     *
     Plaintiff/Appellee,             *
                                     *
     v.                              *
                                     *
Thomas Hundley,                      *
                                     *
     Defendant/Appellant,            *
                                     *
Scott Ray Mabrier, Ralph Meyer,      *
Jody L. Stokes, Kannis Johnson,      *
Jimmey Lee Cook, William E.          *
Clark; James A. Middleswart,         *
Nathan D. Reed,                      *
                                     *
     Plaintiffs/Appellees,           *
                                     *
     v.                              *
                                     *
Iowa Department of Corrections,      *
Sally Chandler Halford, Charles      *
Lee, John Thalacker, Mona Burns,     *
Steven Wolmutt,                      *
                                     *
     Defendants/Appellants.          *

_____

Submitted:  October 19, 1995

Filed:  February 21, 1996
_____

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Defendant prison officials appeal from the district court's order enjoining them from withholding court-ordered restitution deductions from funds inmates receive from outside sources without providing an individualized pre-deprivation hearing and requiring the defendants to repay money that was previously deducted without a hearing.

## I.

Iowa law requires virtually all inmates convicted in Iowa to pay restitution to crime victim(s) and to the state to cover court costs, court-appointed attorney fees or the expenses of a public defender.  See Iowa Code § 910.2 (1990).  Pursuant to Iowa Code § 910.3, Iowa courts order a set amount of restitution at the time of sentencing.  The Director of the Iowa Department of Corrections ("the Department") then has a restitution plan prepared pursuant to section 910.5(1).  An inmate may have his restitution plan reviewed by the Iowa District Court at any time during his incarceration. Iowa Code § 910.7.

In the spring of 1992, the Department began automatically applying twenty percent of all money received by an inmate toward that inmate's restitution obligations.  This deduction included not only money received from prison wages, but also money received from

outside sources such as family and friends.  This case is about the collection of that twenty percent from outside sources.

We begin with a timeline charting the statutory and procedural history relevant to this case.  Before March 1992, the Department deducted restitution only from inmates' prison allowances--that is, from the money inmates earned while in prison either from working or from idle pay.  When the Department began deducting from money received from outside sources, several inmates filed suit alleging that the deductions denied them due process and had no basis under Iowa law.

The Department asserted as authority Department policy number IN-V-106, as amended, which authorized deductions for restitution payments from all credits to an inmate's account.  The policy exempted from deduction money given to an inmate for use for a specific purpose, such as medical costs or funeral trip expenses.

The Department claimed as alternate authority Iowa Administrative Code (IAC) rule 201-20.11, which was also in effect at the time of suit and which provided that credits to an inmate's account from outside sources could be deducted for criminal restitution with authorization from the inmate, a court order, or approval from the warden/superintendent.

The district court referred the case to a magistrate judge for recommendations.  The magistrate judge found that IN-V-106 had not been properly promulgated under the rule-making provisions of the Iowa Administrative Procedures Act.  Having found the policy invalid, the magistrate judge concluded that it was unnecessary to determine whether the failure to provide a pre-deprivation hearing violated the due process clause.

On October 12, 1994, the district court granted summary judgment for the inmates, adopting the magistrate judge's report

and recommendation, but modifying it to consider the due process issue. The district court noted that the defendants were also claiming authority to make restitution deductions under IAC rule 201-20.11. Presuming the validity of the rule, the district court held that notice and an informal pre-deprivation hearing were required. The court did not specify the type of hearing required or whether individual hearings were required in the case of those inmates receiving weekly or monthly installment payments.

On February 1, 1995, the district court entered an amended judgment, which requires the defendants to restore money improperly taken from plaintiffs' accounts, enjoins them from any further application of IN-V-106, and enjoins them from applying IAC rule 201-20.11 to deduct from outside sources without first providing notice and at least informal pre-deprivation process.

In December 1994, the Iowa Supreme Court held, in a parallel case brought by a different inmate, that although the Department had authority to deduct restitution payments from funds inmates receive from outside sources, the inmates are entitled as a matter of due process to a one-time informal opportunity to state their objections, an opportunity that the state procedures in place at that time did not provide. Walters v. Grossheim, 525 N.W.2d 830 (Iowa 1994).

The Iowa legislature enacted legislation, effective July 1, 1995, which provides, in part, that:

> [t]he director shall deduct from an inmate account an amount established by the inmate's restitution plan of payment. . . . Written notice of the amount of the deduction shall be given to the inmate, who shall have five days after receipt of the notice to submit in writing any and all objections to the deductions to the director, who shall consider the objections prior to transmitting the deducted amount to the clerk of the district court. The director need give only one notice for each action or appeal for which periodic deductions

-4-

are to be made.

See Iowa Code § 904.702 (West Supp. 1995).

In compliance with the district court's order, after June 30, 1994, the defendants ceased making deductions from funds received from outside sources. Thus, the time period relevant to the inmates' claims falls between March 1992, when the deductions began, and June 30, 1994, when they ceased. During the second year of this period, for reasons largely unrelated to this litigation, all money collected for restitution was escrowed. During this two-year period, the defendants engaged in an across-the-board policy of deducting twenty percent from all money received from outside sources. At any time during this period an inmate could petition the court under Iowa Code section 910.7 for a hearing on any matter related to his restitution plan or payment plan.

Because the 1995 legislation requiring a pre-deprivation hearing cures Iowa law of any potential due process problems, the question of prospective relief is moot. We need review only the district court's retroactive order requiring the Department to reimburse prisoners whose money was taken without a hearing. In reviewing this order, we will not address the inmates' claim that policy IN-V-106 was improperly promulgated under Iowa law, as neither party contests, and the district court did not question, the Department's authority under IAC rule 201-10.11.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Roth v. U.S.S. Great Lakes Fleet, Inc., 25 F.3d 707, 708 (8th Cir. 1994). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a

-5-

matter of law.  Id.  Finding no factual disputes, we confine our discussion to whether, as a matter of law, inmates were deprived of due process by the Department's across-the-board policy of deducting twenty percent from money received by inmates from outside sources.

The inmates do not attack the validity of their restitution obligations.  Nor do they attack the constitutionality of applying a portion of their prison wages or "idle pay" toward those restitution obligations.  See Buckley v. Barlow, 997 F.2d 494 (8th Cir. 1993) (upholding deduction of one-half of inmate's idle pay pursuant to disciplinary committee's restitution order); Hrbek v. Farrier, 787 F.2d 414 (8th Cir. 1986) (holding that inmates have no constitutionally protected interest in the wages earned while in prison).  Instead, they argue that money cannot be taken from outside source donations to satisfy those obligations without first providing an individualized hearing, ostensibly to determine whether the money is for an important purpose that should render it exempt from deductions.  They contend that an across-the-board deduction of twenty percent from all money entering prison accounts violates the Due Process Clause.

We agree with the district court that inmates have a property interest in money received from outside sources.  See Jensen v. Klecker, 648 F.2d 1179, 1183 (8th Cir. 1981) (holding that inmates have a property interest in their money); Sell v. Parratt, 548 F.2d 753, 757 (8th Cir.) (same), cert. denied, 434 U.S. 873 (1977).  Thus, inmates are entitled to due process before they can be deprived of these monies.  The question to be answered is what process is due before money received from outside sources can be applied toward an inmate's restitution obligations.  Mathews v. Eldridge, 424 U.S. 319 (1976), instructs us to balance three factors when addressing such a question:  1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used,

-6-

and the probable value of additional or substitute procedures; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335; see also Washington v. Harper, 494 U.S. 210 (1990) (applying Mathews factors to prisoner's due process attack on a prison policy).

We first address the inmates' private interest in the money they receive from outside sources. Although incarceration does not deprive prisoners of the protection of the United States Constitution, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979). Because of the underlying purposes of our penal system, many privileges and rights are withdrawn or limited during incarceration. Id. at 546.

Although the inmates' private interest in their personal funds is apparent, inmates are not entitled to complete control over their money while in prison. See Foster v. Hughes, 979 F.2d 130 (8th Cir. 1992) (inmates do not have a constitutional right to place their money in interest-bearing accounts); Blankenship v. Gunter, 898 F.2d 625 (8th Cir. 1990) (inmates can be constitutionally prohibited from using money in their prison accounts for religious donations).

Moreover, inmates are not absolutely deprived of the benefit of their money when part of it is applied toward their restitution debts. In Beeks v. Hundley, 34 F.3d 658 (8th Cir. 1994), we held that officials were not barred from applying the proceeds of a section 1983 damage award they had paid the Iowa inmates to the inmates' criminal restitution obligations. Specifically, we stated that inmates received "virtually all the benefit of their § 1983 money judgment when the proceeds were applied to satisfy their restitution debt." Id. at 661. We find appellees' attempts to

-7-

distinguish <u>Beeks</u> to be unpersuasive. Regardless of factual and procedural differences between the cases, the general principle that an inmate whose money is taken and applied toward his court-ordered restitution debt does not suffer from a total deprivation of that money is applicable to both cases. When an inmate leaves prison, he leaves with his restitution debts. Any payment of those debts while the inmate is incarcerated will work to his ultimate benefit. Other courts have followed a similar logic. <u>Cf.</u> <u>Campbell v. Miller</u>, 787 F.2d 217, 222 (7th Cir.) (holding constitutional prison officials' decision to impound a prisoner's account pending his compliance with a restitution order and characterizing the prisoner's complaint as a restriction on his freedom to use his funds in a particular way, rather than a total deprivation of the money), <u>cert. denied</u>, 479 U.S. 1019 (1986).

Turning to the risk of erroneous deprivation through the procedures used, and the probable value of additional or substitute procedures, we find no merit in the inmates' argument that they received no procedural protection before the deductions were made. In addition to the notice provided by policy IN-V-106, each inmate was granted the procedural protections of a trial or plea proceeding to establish guilt, and a subsequent sentencing hearing to set punishment, including the amount of restitution. <u>See</u> Iowa Code § 910.3. The Director of the Department then had an individualized restitution plan prepared pursuant to section 910.5. Upon petition by the inmate, any matter related to an inmate's restitution plan or plan of payment could then be reviewed by the Iowa District Court at any time during his incarceration. Iowa Code § 910.7.

Moreover, the inmates' argument that to satisfy the pre-deprivation hearing requirements of the Due Process Clause, <u>see</u> <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 436 (1982), the Department was required to provide an individual hearing before any deductions were made from outside-source funds, is misplaced. The

inmates limit their analysis to an inappropriately narrow period--
that immediately before the deductions were actually made. The
deprivation in this case actually occurred on a broader level in
three stages. The initial deprivation occurred when, after a full
trial or plea hearing and an opportunity to be heard on claims of
a lack of ability to pay restitution, a restitution plan and a
payment plan were established. At this point, a debt was created
and the inmate was deprived of complete freedom over how to spend
future money until this debt was satisfied.

Prior to this initial deprivation, the inmates were provided
with both notice and an opportunity to be heard. Moreover, at this
stage, before restitution was set, the court was required to
evaluate an inmate's individual ability to pay. See State v.
Haines, 360 N.W.2d 791 (Iowa 1985) (noting that it is the
"reasonable ability to pay" standard which allows § 910.2 to pass
constitutional muster). In addition, the plan of restitution and
plan of payment were both subject to modification by the court.
See Iowa Code § 910.7.

Once this initial deprivation occurred, the inmates' interest
in their money was diminished, much like the limitations on the
freedom to spend money suffered by any person who incurs a debt.
When the Department took the next step of designating specific
procedures for the repayment of an inmate's restitution, the
procedural requirements diminished. See, e.g., Scott v. Angelone,
771 F. Supp. 1064 (D. Nev. 1991) (holding that notice and post-
deprivation grievance procedures are sufficient process to freeze
an inmate's prison trust account until the prisoner pays for
medical expenses he has incurred). At this second stage of
proceedings, the Department provided prisoners with notice of the
new twenty-percent deduction policy and of the continued
opportunity to contest their payment plans following this
amendment.

-9-

At the third stage, deductions were taken from money received by an individual inmate. We see no due process need for an additional hearing at this stage in light of the protections already afforded the inmates by the foregoing procedures.

Finally, we consider the third <u>Mathews</u> factor, the government's interest. In this case, the restitution system serves the important state interests of compensating victims and teaching inmates responsibility. <u>See</u> <u>State v. Kluesner</u>, 389 N.W.2d 370 (Iowa 1986); <u>Haines</u>, 360 N.W.2d at 795.

Furthermore, the state's interest in maintaining administrative control over prisons is significant. Courts are not ideally situated to oversee the minute details of prison administration. <u>Procunier v. Martinez</u>, 416 U.S. 396, 405 (1974). We are in no position to determine the administrative costs of providing a hearing before deducting from each incremental deposit that a prisoner receives from an outside source.[1] In the single year that the money was escrowed, prison officials accumulated approximately $538,000. The Department may reasonably have determined that an across-the-board deduction was the best way to deal with such large sums of money. We accord deference to such administrative decisions.

## III.

In conclusion, we find that a balancing of the <u>Mathews</u> factors compels us to hold that the Department's deduction from funds received from outside sources applied to satisfy an inmate's restitution obligations during the time in question did not violate the Due Process Clause. Given the limited nature of the

---

[1]We note that although the Iowa Supreme Court has now clarified that only one hearing is required to cover routine periodic donations of money, the district court's holding contained no such limitation.

deprivation, the more-limited due process protections applicable to prisoners, and the deference to be paid to state decisions concerning prison administration, we hold that the notice and hearing procedures provided satisfied the flexible demands of the Due Process Clause.

The judgment is reversed, and the case is remanded to the district court for entry of judgment in favor of defendants.

HEANEY, Circuit Judge, dissenting:

I agree with the district court that, as a matter of due process, inmates in Iowa state prisons are entitled to notice and at least an informal hearing before twenty percent of contributions to the inmate by family or friends may be taken to satisfy an inmate's restitution obligation. The district court's position is consistent with that of the Iowa Supreme Court in Walters v. Grossheim, 525 N.W. 2d 830 (Iowa 1994), in which the court highlighted that the Iowa Code requires a restitution plan of payment "to reflect individualized factors bearing on the inmate's ability to pay" based on the inmate's "income, physical and mental health, education, employment and family circumstances." Id. at 832 (citing Iowa Code § 910.5(1)). The Code does not authorize the "blanket post-restitution-plan deduction from non-wage assets" at issue in this case. Id.

The majority states that the Iowa inmates received adequate procedural protections before deductions were made, in part because they were given a sentencing hearing at which the court set the amount of restitution owed. As the majority points out, the inmates are not challenging the court's initial restitution determination; nor would such a challenge be relevant because at sentencing, the court does not purport to determine the amount that an inmate can pay each month while in prison in light of all the factors cited in Grossheim. These decisions are left to other

-12-

officials to make after an informal hearing.

The majority also asserts that the inmates received additional procedural protection through the opportunity to have their restitution plans reviewed by the Iowa District Court under section 910.7 of the Iowa Code.  Although the inmates may contest amounts withheld in a post-deprivation hearing, such a hearing may deprive them of resources at a time when these resources are necessary to meet needs recognized by the State of Iowa.

The majority is correct in noting that we should give deference to state decisions concerning prison administration.  Yet, in the context of deductions from an inmate's outside resources, the State has determined that a pre-deprivation hearing is required.  Thus, the majority rejects, rather than defers to, state policy as determined by both the Iowa Supreme Court and the Iowa Legislature.

Finally, while it is true that we are obligated to follow our own precedent, the case the majority relies on, Beeks v. Hundley, 34 F.3d 658 (8th Cir. 1994), did not involve the issue presented in this case.  In Beeks, we specifically stated:

> Beeks and McKenzie also argue that state law and their due process rights were violated by the manner in which victim restitution was deducted from their prison accounts.  These issues were not considered by the district court. . . .  [N]or were these additional issues fairly raised by the informal pro se request for relief.

Id. at 662.

We should follow the district court and the Iowa Supreme Court and hold that the inmate's due process rights were violated by Iowa prison authorities and grant the relief given by the district court.  To do otherwise is to deny inmates the due process to which

they are entitled under the federal Constitution.  Accordingly, I would affirm the decision of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.