97 F.3d 1445
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Gerald W. CLEMENTE, Plaintiff, Appellant,
v.
Robert Q. CRANE, et al., Defendants, Appellees.
 No. 95-2227.
 United States Court of Appeals, First Circuit.
 Oct. 09, 1996.
 
 Richard E. Bachman, with whom John A. King and Hale, Sanderson, Byrnes & Morton were on brief, for appellant.
 Salvatore M. Giorlandino, Assistant Attorney General, with whom Scott Harshbarger, Attorney General, and Phyllis N. Crockett, Assistant Attorney General, were on brief, for appellees.
 D.Mass.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, CYR and LYNCH, Circuit Judges.
 LYNCH, Circuit Judge.
 
 
 1
 The Commonwealth of Massachusetts State Board of Retirement terminated plaintiff Gerald W. Clemente's disability retirement and group insurance benefits because of his conviction of a crime four years earlier. Clemente had been federally prosecuted and convicted for his involvement in the theft and sale of police promotional exams, a scheme popularly known as the "Exam Scam." See generally United States v. Doherty, 867 F.2d 47 (1st Cir.), cert. denied, 492 U.S. 918 (1989). Clemente's crime, the Board reasoned, involved the funds or property of a state agency and so justified the termination of Clemente's benefits under Mass. Gen. L. ch. 32, § 15(1), (3). Clemente did not receive prior notice of the impending termination of benefits; nor was he given an opportunity to be heard. Four years after the termination, after Clemente had appealed the decision through the state administrative process, the Board finally held a hearing. It then determined that Clemente was not entitled to receive the benefits the Board had earlier stopped paying. The Board also determined that Clemente owed an agency of the Commonwealth, the Metropolitan District Commission ("MDC"), sums in restitution for his crime.
 
 
 2
 In the interim, Clemente had filed this action alleging procedural and substantive due process violations. The district court held that the Board's initial termination of Clemente's benefits violated Clemente's constitutional right to procedural due process and that the defendant Board members were individually liable. The court determined that Clemente's federal damages were the payments he would have received up to the time of an adequate hearing and then "offset" the damages by the restitutionary amount the Board had determined Clemente owed to the MDC on account of his crimes, an amount apparently greater than the damages suffered. Clemente appeals from the judgment, complaining primarily of the offset. We affirm.
 
 I. Background
 
 3
 Clemente worked as a police officer with the MDC until May 28, 1983, when the Board granted him an accidental disability retirement due to his hypertension, which prevented him from working. Clemente thereafter received a monthly allowance from the State Retirement System as well as group medical insurance benefits for himself and his wife. In November 1986, Clemente pleaded guilty to a federal racketeering charge. He had participated in a scheme to defraud the Commonwealth by stealing police promotional exams, giving or selling them to others, and altering scores. In 1988, the Board requested an opinion from the State Attorney General as to the effect of the conviction on Clemente's entitlement to pension benefits. The Attorney General responded in June 1990, advising the Board that the Exam Scam scheme, to the extent that it actually succeeded, was a crime that involved MDC funds or property within the meaning of Mass. Gen. L. ch. 32, § 15.[1]
 
 
 4
 In July 1990, without giving Clemente notice that such an action was contemplated, the Board voted to terminate his benefits based upon its determination that his racketeering conviction was for an offense which involved the funds or property of the MDC. The Board then notified Clemente of its action and ceased paying benefits.
 
 
 5
 Clemente appealed to the Contributory Retirement Appeal Board, which, in September 1992, remanded the matter to the Board and directed the Board to hold a hearing if Clemente so requested. In 1994, the Board finally notified Clemente of its intent to initiate misappropriation charges and then held a hearing upon his request. On January 4, 1995, the Board issued a decision finding that Clemente had misappropriated MDC funds and owed restitution to the MDC in the amount of $239,146 plus interest and ordered forfeited all his rights to his retirement allowance and accumulated deductions.[2]
 
 
 6
 In 1993, while the state administrative action was pending but before the Board had given him a hearing, Clemente filed this federal action under 42 U.S.C. § 1983 against the Commonwealth, the Board, and the members who served on the Board when Clemente's benefits were terminated in 1990. Clemente claimed that the defendants terminated his disability retirement allowance and medical benefits without notice or a hearing, thus violating his rights to both substantive and procedural due process. He also claimed that the termination constituted further punishment for his participation in the Exam Scam, thus violating his right to be free from double jeopardy. He requested damages for these constitutional violations.[3] The district court dismissed the claims against the Commonwealth and the Board, as well as the claims against the Board members in their official capacities. The Board members in their individual capacities are thus the only remaining defendants.
 
 
 7
 The district court withheld decision on the matter until after the Board issued its January 1995 decision. Thereafter, on cross motions for summary judgment, the district court held that the Board had violated Clemente's procedural due process rights by failing to give him notice and a hearing before terminating his benefits. The defendants did not dispute that Clemente had a constitutionally protected property interest in the benefits, and that, under state law, he was entitled to notice and an opportunity to be heard before the Board terminated the benefits. The district court rejected the defendants' argument that the Board's actions were "random and unauthorized" acts that could be cured by a post-deprivation hearing under Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330 (1986), and rejected the defendants' claims of qualified immunity. In addition, the court held that Clemente's substantive due process rights had not been violated, and it also rejected his double jeopardy claim, holding that the termination of payments was not punitive, and even if it were, that the Board's action was not unconstitutional because the criminal prosecution and the termination proceedings were brought by separate sovereigns.
 
 
 8
 The district court accepted Clemente's contention that the "deprivation decision could have been made no faster in a proper fashion." Therefore, the district court calculated damages from the due process violation to be the pension benefits Clemente would have received from the time the benefits were terminated until the January 1995 decision, as well as out-of-pocket medical expenses that would have been covered under the health insurance plan. That amount was $104,064.85, plus interest. However, the district court also determined that "[t]his amount may be used to offset the restitution amount Clemente owes as a result of the defendants' January 4, 1995, decision." Clemente has appealed both the award of the offset and the rejection of his double jeopardy claim.[4]
 
 II. Double Jeopardy
 
 9
 Clemente appeals the district court's holding that the Double Jeopardy Clause did not bar the termination of his benefits. Even assuming arguendo that the Board's termination of Clemente's benefits constituted punishment,[5] the doctrine of double jeopardy does not apply to suits brought by separate sovereigns. Abbate v. United States, 359 U.S. 187, 194 (1959); United States v. 40 Moon Hill Road, 884 F.2d 41, 43 (1st Cir.1989). Clemente was convicted of a federal offense in federal court. The Double Jeopardy Clause does not bar later action by the Commonwealth to terminate benefits and thereby recover sums it lost due to the offense, even if the termination were in part punitive.
 
 III. The Offset
 
 10
 Clemente challenges the offset, arguing that it should be reversed because it was not timely pleaded[6] and because the Board's order did not establish a legally enforceable debt for the amount of restitution. The defendants counter by characterizing the district court's judgment as a permanent injunction, warranted by the equities in the case, and argue that the district court did not abuse its equitable discretion in formulating such relief. The defendants also argue that the offset was appropriate to prevent a windfall to Clemente.[7]
 
 
 11
 As the Supreme Court said in Carey v. Piphus, 435 U.S. 247, 258-59 (1978):
 
 
 12
 In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question--just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.
 
 
 13
 Here, the district court was concerned about fashioning an award to the plaintiff that would "redress," to use the language of § 1983, his actual injuries. The court's order was intended to permit "judgment to be rendered that does justice in view of the one transaction as a whole." Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299 (1946).
 
 
 14
 The remedial order is to be read as a whole and provides:
 
 
 15
 The clerk is directed to enter judgment for the plaintiff directing defendants first to apply as an offset to the restitutionary award made against plaintiff by the defendants' decision of January 4, 1995, an amount equal to the [damages plaintiff suffered in terms of pension benefits and medical expenses].
 
 
 16
 The order also establishes a mechanism that accommodates the fact that Clemente has appealed the Board's January 4, 1995 decision in state court:
 
 
 17
 The Board's January 4, 1995 decision recites that such an offset would be "far exceeded by the principle [sic] amount of restitution due." Under the circumstances, it does not appear necessary for this court to calculate the precise offset in order to adjudicate the issues between the parties in this litigation. Of course, if there is such a dispute, it may be resolved in light of the principles developed in this Memorandum, through the ordinary administrative process.
 
 
 18
 By this mechanism, we understand that should the state court reject or revise the Board's decision, a corollary adjustment would be made in the amount, if any, recoverable under the federal order. The issue here is whether such an order was within the power of the court and represented a proper exercise of its discretion.
 
 
 19
 Clemente is correct that this is not a classic "set-off," within the technical meaning of the term. A "set-off" is a " 'counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action.' " United Structures of Am., Inc. v. G.R.G. Eng'g, S.E., 9 F.3d 996, 998 (1st Cir.1993) (quoting Black's Law Dictionary 1230 (5th ed.1979)). In this case, however, the debts were not reciprocal, as is usually true in a set-off. Clemente's damages ran only against the members of the Board in their individual capacities,[8] while the restitution award was due the MDC, an agency of the Commonwealth. Thus, the mutuality of debt generally required to support a set-off was lacking.[9] But Clemente's argument that it is not a set off[10] in the end proves nothing.
 
 
 20
 Despite defendants' inappropriate characterization of the relief as injunctive relief, we believe the district court was exercising its equitable judgment in fashioning the remedy. We start with the premise that "[t]he measure of damages in section 1983 actions is a matter of federal common law." Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1045 (1st Cir.1988); see also Sullivan v. Little Hunting Park, Inc. 396 U.S. 229, 240 (1969) ("The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired."). We review the exercise of equitable jurisdiction under an abuse of discretion standard. Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1471 (1st Cir.1992).
 
 
 21
 In federal courts, law and equity jurisdictions are merged. Fed.R.Civ.P. 2. Thus, Clemente's legal argument on set off does not cut back on the court's equitable remedial power. One commentator has noted that "[a]fter merger, a court having both law and equity powers may give the plaintiff any remedy justified by pleading and proof." 2 Dobbs, Law of Remedies § 2.6(1), at 150 (2d ed.1993). The ancient distinctions between law and equity, helpful in some contexts, see Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), are less so here. "[W]ith the merger of law and equity it is difficult to see why equitable defenses should be limited to equitable suits anymore, and of course many are not so limited...." Byron v. Clay, 867 F.2d 1049, 1052 (7th Cir.1989) (Posner, J.).[11] Courts also have articulated the broader principle "that adjures a court to consider the third party effects of equitable relief and to shape that relief accordingly." Id. at 1051.
 
 
 22
 In fashioning a remedy under § 1983, trial judges may consider the equities of the matter. "[T]he hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 321 (1st Cir.1989) (en banc) (whether to reinstate a public employee fired in violation of § 1983 is within the discretion of trial court); see also Walker v. Waltham Hous. Auth., 44 F.3d 1042, 1048 (1st Cir.1995) (trial judge was "unquestionably within her authority in holding that the equities did not warrant [reinstatement to public job]"). "The substantive scope of relief available is a matter of the equitable powers of the federal courts. Accordingly, courts have exercised broad remedial power in civil rights actions." Knecht v. Gillman, 488 F.2d 1136, 1140 (8th Cir.1973). Whatever the limits of a federal court's equitable remedial power in an action under 42 U.S.C. § 1983, we believe the "restitution" order here is well within that scope and was proper. Restitution orders requiring criminals to restore the victim to the victim's original position are of venerable origin. See Note, Victim Restitution in the Criminal Process; A Procedural Analysis, 97 Harv. L.Rev. 931, 933 (1984).
 
 
 23
 Here, due to the mechanisms implementing Eleventh Amendment guaranties, the damages were awarded against individual defendants, and the restitution was owed not to these defendants, but to a state agency. See Hafer v. Melo, 502 U.S. 21, 26-30 (1991). However, we think the district court was entitled to consider the close relationship between the individual defendants--state officials--and the state. In fact, defendants were exercising their responsibilities as state officials in the very activities that gave rise to this litigation.
 
 
 24
 Despite the distinction between the individual defendants and the state agency, the district court could look to the underlying reality of the situation. "The essence of equity jurisdiction has been the power ... to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944). This is an unusual case, with a fact pattern not likely to recur, and we think the district court was sensitive to the realities. The alleged procedural due process violation and the basis for the assertion of the setoff arise from related questions as to what plaintiff is in fact due by way of benefits, questions arising from the statutory scheme the Commonwealth has created in Gen. L. ch. 30. These are not unrelated parties or unrelated matters.[12] Indeed, the order was entered against a backdrop in which the Board, after giving Clemente the hearing to which he was entitled, found that he was not entitled to benefits.
 
 
 25
 Clemente argues strenuously that reversing the offset will produce no windfall because there is no right of recoupment unless he wishes to have his pension rights reinstated under Mass. Gen. L. ch. 32, § 15.[13] The state courts will address the state law issues here on Clemente's appeal from the Board's order. The district court order provides a mechanism for adjustment which, depending on the outcome of that appeal, should avoid the problem of overpayment to either side. In any event, the state law issues, while informing the federal court's exercise of discretion, do not define the limits of that discretion.
 
 
 26
 Each side cites to us the Eighth Circuit decisions in Hankins v. Finnel, 964 F.2d 853 (8th Cir.), cert. denied, 506 U.S. 1013 (1992) and Beeks v. Handley, 34 F.3d 658 (8th Cir.1994). While neither Hankins nor Beeks is on point (and each raises issues extraneous to this case), we agree with the Eighth Circuit that § 1983 relief must be consistent with the deterrence goal inherent in § 1983. An important purpose of § 1983 is "to serve as a deterrent against future constitutional deprivations." Owen v. City of Independence, 445 U.S. 622, 651 (1980). Along with the Beeks court we conclude that "victim restitution does not defeat § 1983's deterrence goal.[14] Beeks, 34 F.3d at 661; see also Doe v. Morgenthau, 871 F.Supp. 605, 611 (S.D.N.Y.1994) ("Any claim ... on behalf of plaintiff's victims would be an offset to plaintiff's claims against the People and could be asserted as of right.").
 
 
 27
 Ultimately, the deterrence argument must also accommodate "the factual permutations and the equitable considerations they raise" on a case by case basis. McKennon v. Nashville Banner Pub. Co., 115 S.Ct. 879, 886 (1995). While McKennon was an ADEA action, the related deterrence argument there did not trump a damages remedy which fairly accounts for a plaintiff's own wrongdoing. McKennon holds that where after-acquired evidence demonstrates an employer would have terminated plaintiff anyway, even though the employer had a discriminatory motive, the plaintiff, as a general rule, is not entitled to front pay or reinstatement, nor to back-pay damages extending beyond the time the employer learned about the employee wrongdoing that would have led to legitimate discharge.[15] Id. The compensation analysis here fairly accounted for plaintiff's own wrongdoing and does not undermine the deterrent effect of the statute.
 
 IV. Conclusion
 
 28
 We conclude that the district court properly granted summary judgment in favor of the defendants on the plaintiff's double jeopardy claim and did not abuse its discretion in fashioning the remedial order. We affirm the judgment.
 
 
 
 [1]
 The relevant portions of Mass. Gen. L. ch. 32, § 15 read as follows:
 (1) Misappropriation of Funds. Any member who has been charged with the misappropriation of funds or property of any governmental unit in which or by which he is employed or was employed at the time of his retirement or termination of service ... and who files a written request therefor shall be granted a hearing by the board.... If the board after the hearing finds the charges to be true, such member shall forfeit all rights ... to a retirement allowance or to a return of his accumulated total deductions ... to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board....
 (3) Forfeiture of Rights upon Conviction. In no event shall any member after final conviction of an offense involving the funds or property of a governmental unit ... referred to in subdivision (1) of this section, be entitled to receive a retirement allowance or a return of his accumulated total deductions ... unless and until full restitution for any such misappropriation has been made.
 
 
 [2]
 The Board found that "Clemente misappropriated the amount of $216,175.00 from the MDC, and that he is responsible for $22,971.00 in costs of investigation. The total amount of restitution due the MDC is the principal amount of $239,146.00, plus interest."
 
 
 [3]
 In his complaint, Clemente also sought prospective relief, but after the Board held a hearing on the matter, these prayers were not pursued, although they have not been formally dismissed
 
 
 [4]
 Defendants have not appealed from the judgment
 
 
 [5]
 The district court held that the termination of benefits was purely remedial because it found that "[o]nce the MDC has been fully reimbursed for the funds or property Clemente allegedly misappropriated, Clemente will be entitled to receive the remainder of his pension payments." This finding was apparently based upon a 1990 letter written by the Board's legal counsel. However, in its January 1995 decision, the Board stated that "[Clemente] is ineligible for any retirement allowance under the provisions of sections 1-28, regardless of whether he ever makes restitution or whether the Board recovers misappropriated funds from the other MDC co-conspirators." Because we affirm summary judgment on the double jeopardy claim on the separate sovereign theory, we need not decide whether the termination was punitive in nature
 
 
 [6]
 Defendants first raised the issue in pleadings filed after the summary judgment motion. While the defendants ran a risk in being so dilatory, the district court reached the issue and there was adequate opportunity for Clemente to be heard. We reach the issue as well
 
 
 [7]
 The defendants assert further that there was no procedural due process violation, or alternatively, that there were no actual damages. However, because the defendants failed to file a cross-appeal, we do not consider the argument as to liability. An appellee is not permitted to urge reversal of a judgment. United States v. Lumbermens' Mut. Casualty Co., 917 F.2d 654, 658 n. 6 (1st Cir.1990); Bath Iron Works Corp. v. White, 584 F.2d 569, 573 n. 2 (1st Cir.1978); 15A Wright et al., Federal Practice and Procedure § 3904, at 196 (2d ed.1992). Nor have the defendants appealed from the measure of damages awarded before the offset, and so we do not express any views on the propriety ab initio of that award
 
 
 [8]
 The claims against the Commonwealth and the Board were dismissed and the federal claims were dismissed insofar as they sought retroactive damages against the members in their official capacities
 
 
 [9]
 Some courts have held that there is an equitable exception to the mutuality requirement when it "becomes necessary to effect a clear equity or to prevent irremediable injustice." Black & Decker Mfg. Co. v. Union Trust Co., 4 N.E.2d 929, 930 (Ohio App.Ct.1936). We find it unnecessary to reach this issue
 
 
 [10]
 One response to Clemente's argument is that even the law of damages recognizes in certain instances the appropriateness of offsetting awards, under the guise of "recoupment." A recoupment is " 'a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction.' " United Structures, 9 F.3d at 998 (quoting Black's Law Dictionary 1147 (5th ed.1979)). Recoupment may only be asserted to diminish or defeat a plaintiff's claim. Reiter v. Cooper, 507 U.S. 258, 264 (1993); Nashville Lodging Co. v. Resolution Trust Corp., 59 F.3d 236, 246 (D.C.Cir.1995); 6 Wright et al., Federal Practice and Procedure § 1401, at 10 (2d ed.1990). In United Structures, 9 F.3d at 999, then-Chief Judge Breyer pointed out the relevance of the doctrine of recoupment to cases such as Clemente's:
 Recoupment ... is "in the nature of a defense" and is intended to "permit ... judgment to be rendered that does justice in view of the one transaction as a whole."
 Id. (quoting Rothensies, 329 U.S. at 299). The court in United Structures further commented that the plaintiff "has, in a sense, no right to funds subject to recoupment." Id. at 998.
 
 
 [11]
 Upholding in Byron the dismissal of a § 1983 action brought by a former government employee who had been discharged for political reasons and who sought reinstatement to a "ghost job" (a job for which no work was required but for which a salary was paid), Judge Posner noted: "It is enough to observe that a highwayman who decided to sue his partner for common law damages as well as for an equitable accounting for profits would surely have gotten no further with his 'legal' claim than with his 'equitable' one." Id
 
 
 [12]
 As a result, we express no views on whether such a restitutionary order in favor of a truly independent third party, or based on unrelated transactions, could be used to set off a judgment
 
 
 [13]
 This may or may not be a correct reading of state law. For example, Mass. Gen. L. ch. 32, § 15(1) provides that "[i]f the Board after the hearing finds the charges [of misappropriation] to be true, such member shall forfeit all rights...." Id. (emphasis added); see also DeLeire v. Contributory Retirement Appeal Bd., 605 N.E.2d 313, 316 (Mass.App.Ct.1993) ("In accordance with G.L. c. 32 § 10(4), [plaintiff] is entitled to the return of his accumulated total deductions. That right is qualified, however, by G.L. c. 32 § 15(3), which provides that, upon conviction of an offense involving misappropriation of any funds of the governmental unit in which the person was employed, such return is conditioned upon the making of full restitution of the funds misappropriated."), rev. denied, 617 N.E.2d 640 (Mass.1993)
 
 
 [14]
 Indeed, Clemente was awarded attorney's fees, not subject to the offset. Attorney's fee awards are themselves a deterrent. Congress must have believed so when, in a related area of law, it enacted the 1991 Civil Rights Act, which provides for recovery of attorney's fees in mixed motive cases even when actual damages are unavailable. 42 U.S.C. § 2000e-5(g)(2)(B)
 
 
 [15]
 It is not difficult to imagine a situation where, under McKennon, an illegally discharged employee might win a civil rights suit, yet still walk away empty-handed, as Clemente does in this case. For instance, if the employer discovers the after-acquired evidence which would justify termination on the same day as the illegal discharge, or shortly afterwards, plaintiff's back-pay damages would be nonexistent or minimal